# UNITED STATES DISTRICT COURT

## STATE OF NEW JERSEY

| | | |
|---|---|---|
| EMPIRE STATE SUPPLY CORP., Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Case Number: _____ |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | COMPLAINT |
| v. | ) ) | |
| FOSTER WHEELER AG, STEVEN J. DEMETRIOU, CLAYTON C. DALEY, JR., UMBERTO DELLA SALA, EDWARD G. GALANTE, JOHN M. MALCOLM, J. KENT MASTERS, STEPHANIE S. NEWBY, HENRI PHILIPPE REICHSTUL, and MAUREEN B. TART-BEZER, | ) ) ) ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) ) | |

## COMPLAINT FOR BREACH OF FIDUCIARY DUTIES

Plaintiff Empire State Supply Corp. ("Plaintiff"), by its attorneys, alleges upon information and belief, except for its own acts, which are alleged on knowledge, the following against Defendants (defined below) based upon, among other things, a continuing investigation conducted by and through its undersigned counsel into the facts and circumstances alleged herein, including, without limitation, review and analyses of: (i) the public filings of Foster Wheeler AG ("Foster Wheeler" or the "Company") and AMEC plc ("AMEC") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, public statements, news articles, and other publications disseminated by or concerning Foster Wheeler, AMEC and the Proposed Transaction (defined infra); and (iii) the corporate websites of Foster Wheeler and AMEC.

## SUMMARY OF THE ACTION

1.  Plaintiff on behalf of itself and all other similarly situated public shareholders of Foster Wheeler, brings this action against the members of the board of directors of Foster Wheeler (the "Board" or the "Individual Defendants") for breaches of fiduciary duty in connection with the Board's agreement to sell the Company to AMEC pursuant to a tender offer, through an unfair process and at an unfair price (the "Offer" or "Proposed Transaction").

2.  Foster Wheeler was formed in 1927 from a merger of the Power Specialty Company and the Wheeler Condenser & Engineering Company, two U.S.-based companies, with roots dating back to 1884 and 1891, respectively. Today, Foster Wheeler is a global engineering and construction company and power equipment supplier that delivers technically advanced, reliable facilities equipment through its two business groups: the Global Engineering and Construction ("E&C") Group and the Global Power Group.

3.  On February 13, 2014, Foster Wheeler and AMEC issued a press release jointly announcing entry into an Implementation Agreement dated February 13, 2014 (the

"Implementation Agreement") to sell Foster Wheeler to AMEC.   Under the terms of the Implementation Agreement, each Foster Wheeler share will be exchanged for, at the election of the holder of such share of Foster common stock, a combination of (a) $16.00 in cash plus (b) (i) 0.8998 AMEC shares, par value £0.50 per share or (ii) American Depositary Shares ("ADS") representing 0.8998 AMEC shares, par value £0.50 per share (the "Offer Price").   Each Foster Wheeler shareholder will have the ability to elect the proportion of cash and securities to be received in the Proposed Transaction, which election will be subject to pro rata adjustment. Based on AMEC's stock price of £10.92 per share at the close of trading on February 12, 2014 and an exchange rate of £/$1.658, the Offer Price is valued at approximately $32.29.   The Proposed Transaction is valued at approximately $3.3 billion (taking into account a proposed $0.40 dividend by the Company).   Upon completion of the Proposed Transaction, Foster Wheeler shareholders will own approximately 23% of the combined company.

4.     The Offer Price significantly undervalues both Foster Wheeler's inherent value and its value to AMEC.  The Proposed Transaction appears timed to allow AMEC to take advantage of a temporary decline in Foster Wheeler's business, and at a price that does not reflect Foster Wheeler's prospects.   In fact, prior to the announcement of the Proposed Transaction, analysts at Stephens Inc. and Johnson Rice & Co. set $38.00 and $36.00 per share price targets for the Company, respectively - $5.71 and $3.71 premiums to the Offer Price.

5.     In addition, the Proposed Transaction will be immediately accretive to AMEC. For example, according to AMEC's February 13, 2014 press release, "the combination is expected to double AMEC's revenues from Growth Regions and significantly expand its presence in Latin America."   AMEC's press release further stated, "[c]ombining the two companies will create some cost efficiencies, expected to be at least $75 million per annum."

6.     Moreover, the Board has further breached its fiduciary duties by agreeing to

unfair deal protection devices in connection with the Implementation Agreement, which all but ensure that the inadequate Proposed Transaction will be consummated. These provisions, which further undermine shareholder value by precluding any competing offers for the Company from emerging, include: (i) a no solicitation provision prohibiting the Company from properly shopping itself; (ii) a three business day matching rights period during which AMEC has the option to match any superior proposal received by the Company; and (iii) a termination fee of £32.5 million payable by the Company to AMEC in the event that, among other things, the Company receives and accepts an unsolicited superior proposal. Collectively, these provisions reflect an attempt by the Individual Defendants to lock up the Proposed Transaction at a price that grossly undervalues the Company, thereby securing for themselves the personal financial benefits they have negotiated for themselves in connection with the Proposed Transaction.

7.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties.

8.     To remedy the Individual Defendants' misconduct, Plaintiff seeks, *inter alia*: (i) injunctive relief preventing consummation of the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a transaction that provides the best possible terms for shareholders; (ii) a directive to the Individual Defendants to obtain a transaction which is in the best interests of Foster Wheeler shareholders; and (iii) rescission of, to the extent it has already been implemented, of the Implementation Agreement or any of its terms.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff and Defendants are citizens of different states and the

amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) the Company's Global Power Group is headquartered in this District; (ii) one or more of the Defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12.     Plaintiff, located at 639 McDonald Avenue, Brooklyn, New York 11218, is, and at all times relevant hereto has been, a Foster Wheeler shareholder.

13.     Defendant Foster Wheeler is a corporation organized and existing under the laws of Switzerland with its Global Power Group headquarters located at Perryville Corporate Park, 53 Frontage Road, Hampton, New Jersey 08827 and its principle executive offices located at Shinfield Park, Reading, Berkshire RG2 9FW, United Kingdom.  Formerly headquartered in Clinton, New Jersey, Foster Wheeler moved its operational headquarters to Geneva, Switzerland

- 4 -

in 2010 and later to Reading, U.K. in 2013.   Foster Wheeler common stock trades on the NASDAQ exchange under the ticker symbol "FWLT."

14.     Defendant Steven J. Demetriou ("Demetriou"), 90 Alton Road, Miami Beach, Florida 33139, has served as the Company's Non-Executive Chairman since November 2011 and as a Foster Wheeler director since 2008.

15.     Defendant Clayton C. Daley, Jr. ("Daley"), 5980 Crabtree Lane, Cincinnati, Ohio 45243, has served as a Foster Wheeler director since 2009.

16.     Defendant Umberto della Sala ("della Sala"), 49 Country Acres Drive, Hampton, New Jersey 08827, has served as the Company's President and Chief Operating Officer since January 2007, as Chief Executive Officer ("CEO") of the Global E&C Group since June 2005 and as a Foster Wheeler director since 2011.   Defendant della Sala has been employed with the Company for approximately 39 years, serving in various positions in Europe and the United States.   He previously served as the Company's Interim CEO from October 2010 through September 2011 and as the President and CEO of Foster Wheeler Continental Europe S.r.l., an indirect, wholly-owned subsidiary of the Global E&C Group, from 2001 until January 1, 2010. Defendant della Sala has held various other senior positions with the Company, including as Vice President of Foster Wheeler USA Corporation, an indirect-wholly owned subsidiary within the Company's Global E&C Group, from 1997 to 2000.

17.     Defendant Edward G. Galante ("Galante"), 6414 Waggoner Drive, Dallas, Texas 75230, has served as a Foster Wheeler director since 2008.

18.     Defendant John M. Malcolm ("Malcolm"), c/o Foster Wheeler, 53 Frontage Road, Hampton, New Jersey 08827, has served as a Foster Wheeler director since 2011.

19.     Defendant J. Kent Masters ("Masters"), 109 Beechwood Road, Summit, New Jersey 07902, has served as the Company's CEO and a Foster Wheeler director since October 2011.

20.     Defendant Stephanie S. Newby ("Newby"), 665 River Road, Cos Cob, Connecticut 06807, has served as a Foster Wheeler director since 2004.

21.     Defendant Henri Philippe Reichstul ("Reichstul"), c/o Foster Wheeler, 53 Frontage Road, Hampton, New Jersey 08827, has served as a Foster Wheeler director since 2011.

22.     Defendant Maureen B. Tart-Bezer ("Tart-Bezer"), 1 Jasmine Place, Caldwell, New Jersey 07006, has served as a Foster Wheeler director since 2008.

23.     The Defendants named above in ¶¶14-22 are sometimes collectively referred to herein as the "Board" or the "Individual Defendants."

24.     Collectively, Foster Wheeler and the Individual Defendants are referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

25.     AMEC provides consultancy, engineering, and project management services to the oil and gas, mining, clean energy, and environment and infrastructure markets worldwide. Headquartered in London, United Kingdom, AMEC employs approximately 29,000 people in over 325 offices in around 40 countries.   AMEC common stock trades on the London Stock Exchange under the symbol "AMEC."

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on its own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Foster Wheeler stock who are being and will be harmed by Defendants' actions described below (the "Class").   Excluded

from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any Defendant, and the immediate families of each of the Individual Defendants.

27.     This action is properly maintainable as a class action.

28.     The Class is so numerous that joinder of all members is impracticable.   As of February 14, 2014, there were 99,058,160 shares of Foster Wheeler common stock issued and outstanding.

29.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.   The common questions include, *inter alia*, the following:

(a)     whether the Individual Defendants breached their fiduciary duties of loyalty, fairness, good faith, and care with respect to Plaintiff and the other members of the Class as a result of the conduct alleged herein;

(b)     whether the process implemented and set forth by the Defendants for the Proposed Transaction, including but not limited to, the Implementation Agreement, the Proposed Transaction, and the negotiations concerning the Implementation Agreement and the Proposed Transaction is entirely fair to the members of the Class;

(c)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company and its assets;

(d)     whether the Individual Defendants, or some of them, have put their own interests above and ahead of the interests of the public shareholders of Foster Wheeler, in derogation of their fiduciary duties;

(e)     whether Defendants aided and abetted the breaches of fiduciary duty;

(f)     whether Plaintiff and the other members of the Class would be irreparably harmed if Defendants are not enjoined from effectuating the Proposed Transaction as a result of the wrongful conduct described herein; and

(g)     whether Plaintiff and the Class are entitled to injunctive relief, damages or other relief.

30.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

31.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

32.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

33.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

34.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE FIDUCIARY DUTIES OF INDIVIDUAL DEFENDANTS

35.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Foster Wheeler and owe them unwavering duties of care, loyalty, good faith, independence, and full and candid disclosure.

36.     Where the officers and/or directors of a publicly traded corporation undertake a transaction that that may result in a change in corporate control, the directors have an affirmative fiduciary obligation to obtain a fair price for the corporation's shareholders and disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with their fiduciary duties, the directors of a corporation must not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders;

(d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders; and/or

(e)     violates their fiduciary duties or compromises their loyalty, including by putting their interests before the interests of Foster Wheeler's's other shareholders.

37.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated their duties owed to Plaintiff and the other public shareholders of Foster Wheeler, to obtain a fair price for shareholders in a sale of the Company.  As a result of the Individual Defendants' divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their Foster Wheeler common stock in the Proposed Transaction.

38.     Because the Individual Defendants are knowingly or recklessly breaching their duties of care, loyalty, good faith, and independence in connection with the Proposed Transaction, the burden of proving the inherent or entire fairness of the Proposed Transaction,

including all aspects of its negotiation, structure, price and terms, is placed upon Defendants as a matter of law.

## CONSPIRACY, AIDING AND ABBETTING, AND CONCERTED ACTION

39.     In committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

40.     Each Defendant herein aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions as particularized herein, to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing.  Defendants' acts of aiding and abetting, included the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise and common course of conduct complained of herein.

## FACTUAL ALLEGATIONS

### *The Proposed Transaction*

41.     On February 13, 2014, Foster Wheeler issued a press release announcing the Proposed Transaction.  The press release stated, in pertinent part:

> ZUG, SWITZERLAND, February 13, 2014 -- Foster Wheeler AG (Nasdaq: FWLT) ("Foster Wheeler" or the "Company") today announced that it has entered into a definitive agreement with AMEC plc ("AMEC") pursuant to which AMEC will make an offer to acquire all the issued and to be issued share capital of the Company. Under the terms of the offer, AMEC will offer to exchange for each outstanding share of Foster Wheeler common stock transaction consideration consisting of 0.8998 shares of AMEC stock and $16.00 in cash.

Separately, Foster Wheeler expects to pay a one-time dividend of $0.40 per share prior to, and not conditional on, the closing of the offer. The Company expects that there will be no Swiss withholding taxes on the dividend.

Today's announcement follows the January 13, 2014 announcement of a provisional agreement between the parties.

Based on AMEC's stock price of £10.92 per share (the close of trading on February 12, 2014) and an exchange rate of £/$1.658, the proposed transaction would value each Foster Wheeler share at approximately $32.69 and the fully diluted share capital of Foster Wheeler at approximately $3.3 billion (taking into account the proposed $0.40 dividend by the Company). This represents a premium of approximately 13.8% to $28.73, the Company's closing stock price on November 26, 2013, the trading day prior to initial public reports about a potential business combination involving the Company and AMEC, and a premium of approximately 20.4% to the 3-month volume weighted average price (measured for the three-months ending on November 26, 2013) of approximately $27.15.

### The Inadequate Offer Price

42.     Foster Wheeler, through its subsidiaries, operates engineering and construction, as well as power generating equipment businesses worldwide.  As of February 13, 2014, the Company had a market capitalization of approximately $3.1 billion, with gross assets of $2.6 billion as of September 2013.  In 2012, Foster Wheeler generated operating revenues of $3.4 billion, EBITDA of $279 million and net income of $150 million.

43.     The Company primarily operates through two business groups: the Global E&C Group and the Global Power Group.  In 2012, approximately 70.9% of the Company's operating revenue was attributed to the Global E&C Group, with the 29.1% balance attributed to the Global Power Group.

44.     The Global E&C Group designs, engineers and constructs onshore and offshore upstream oil and gas processing facilities, natural gas liquefaction facilities and receiving terminals, gas-to-liquids facilities, oil refining, chemical and petrochemical, pharmaceutical and biotechnology facilities and related infrastructure.  The Global E&C Group also owns refinery residue upgrading technologies, a hydrogen production process used in oil refineries and

petrochemical plans, a proprietary sulfur recovery technology which is used to treat gas streams containing hydrogen sulfide, and a thermal treatment technology for the processing of hazardous and toxic waste streams. In addition, the Global E&C Group designs and supplies direct-fired furnaces, such as fired heaters and waste heat recovery generators, that are used in a variety of refinery, chemical, petrochemical, oil and gas processes. The Global E&C Group's products and services include: (i) consulting; (ii) design and engineering; (iii) project management and project control; (iv) procurement; (v) construction/commissioning and start-up; (vi) operations and maintenance; and (vii) fire heaters.

45.     The Global Power Group is a world leader in combustion and steam generation technology. It designs, manufactures and erects steam generators and auxiliary equipment for electric power generating stations, district heating and power plants and industrial facilities worldwide. The Global Power Group's products and services include: (i) circulating fluidized-bed ("CFB") steam generators, a commercially viable, fuel-flexible and clean burning way to generate steam on a commercial basis from coal and many other solid fuels and waste products; (ii) pulverized coal ("PC") steam generators, which are commonly used in large coal-fired power plant applications; (iii) industrial steam generators of various types; and (iv) auxiliary equipment and aftermarket services, including, among others, steam generators for solar thermal power plants, surface condensers, feed water heaters, coal pulverizers, and steam generator coils and panels.

46.     Along with the entirety of the engineering and construction industry, Foster Wheeler has struggled over the past several years in the face of significant headwinds brought by the global recession. For example, on March 1, 2013, the Company announced disappointing fourth quarter ("4Q") 2012 financial results, reporting earnings per share ("EPS") of $0.27, well below analysts' $0.44 per share consensus, as reported by *Barrons*. On March 4, 2013, Stifel

Nicolaus downgraded Foster Wheeler from Buy to Hold and removed its $26.00 price target on the Company.  Stifel Nicolaus noted:

> The [Foster Wheeler] story faces headwinds in 2H13, and despite the (16)% sell off following the 4Q12 EPS release we are reducing our rating on [Foster Wheeler] shares from Buy to Hold as we do not see a catalyst over the next 9-12 months. … Management now sees 2013 [Global Power Group] scope revenues of "flat to modestly down." Our view is that [Global Power Group's] top line could have further downside as the segment's 0.60x LTM book-to-bill has yet to show signs of recovery and Asia-Pacific economies remain in flux."

Foster Wheeler shares closed at $20.22 on March 1, 2013.

47.    The Company's troubles continued into fiscal 2013.  On May 2, 2013, the Company reported first quarter ("1Q") 2013 financial results, including adjusted net income of $0.12 per diluted share, compared with adjusted net income of $0.38 per diluted share for the 1Q 2012.  Commenting on the disappointing results, Defendant Masters stated:

> Our net income was below the average quarter of 2012 due in part to the unfavorable impact of the mark-to-market losses and the impairment charge [relating to the Camden, New Jersey, waste-to-energy facility]. Further, as expected, both of our business groups generated lower EBITDA in the first quarter of 2013 than in the average quarter of 2012. However, we do not view first-quarter 2013 earnings per share or EBITDA as a run rate for the remainder of the year.

48.    Subsequently, the Company's prospects began to reverse course.   On August 8, 2013, Foster Wheeler reported second quarter ("2Q") 2013 financial results, including income from continuing operations of $0.68 per diluted share, compared with income from continuing operations of $0.29 per diluted share in the 2Q 2012.  In the August 8, 2013 press release, Defendant Masters stated:

> **Our adjusted income from continuing operations in the second quarter of 2013 was 22% above the average quarter of 2012, due largely to the strong performance of our Global Engineering and Construction (E&C) Group, which reported a 29% increase in EBITDA and a 12% increase in scope revenues. The E&C Group also reported a broad range of very favorable performance metrics, including robust bookings, an improved EBITDA margin and a near-record level of backlog in scope revenue.**

* * *

**We continue to expect full-year scope revenues [for the Global E&C Group] in 2013 to be up materially as compared with 2012**, and we expect the full-year 2013 EBITDA margin on scope revenues in [the Global E&C Group] to be in the range of 10% to 12%. We now expect EBITDA to be more favorable than previously forecasted and that the EBITDA margin in 2013 could be near or above the high end of the full-year range.

* * *

In our Global Power Group, we now expect that full-year 2013 EBITDA margin on scope revenues is likely to be in the range of 17% to 19% on a material decline in sequential-year scope revenues from continuing operations. The revised guidance -- higher margins on reduced revenues -- has resulted in a modest increase in the company's expectations for Global Power Group EBITDA in 2013.

(Emphasis added).

49.     The good news continued for Foster Wheeler's shareholders.  On November 7, 2013, the Company reported third quarter ("3Q") 2013 financial results, including income from continuing operations of  $0.50 per diluted share, compared with the 2012 quarterly average of $0.37 per diluted share.  For the first nine months of 2013, income from continuing operations was $1.32 per diluted share, compared with income from continuing operations of $1.21 per diluted share for the first nine months of 2012.    Commenting on the positive returns, in the November 7, 2013 press release Defendant Masters stated:

**Our adjusted income from continuing operations in the second quarter of 2013 was 22% above the average quarter of 2012, due largely to the strong performance of our Global Engineering and Construction (E&C) Group, which reported a 29% increase in EBITDA and a 12% increase in scope revenues. The E&C Group also reported a broad range of very favorable performance metrics, including robust bookings, an improved EBITDA margin and a near-record level of backlog in scope revenue.**

(Emphasis added).

50.     Indeed, the Company's 3Q 2013 results exceeded the Zacks Consensus Estimate by 23.8%, according to Zacks Investment Research.

51.     Given the Company's recent resurgence and positioning for significant growth, the Proposed Transaction fails to adequately compensate Foster Wheeler's shareholders for the intrinsic value of the Company as well as the significant benefits AMEC will receive from the merger.

52.     Highlighting the inadequacy of the Offer Price, prior to the announcement of the Proposed Transaction analysts at Stephens Inc. and Johnson Rice & Co. set $38.00 and $36.00 per share price targets for the Company, respectively - $5.71 and $3.71 premiums to the Offer Price.

53.     Moreover, Foster Wheeler publicly announced AMEC's proposed offer (with identical terms as the Proposed Transaction) on January 12, 2014.  At that time, the Offer Price represented a mere **0.6% premium** over Foster Wheeler stock's 20-day average price, compared with a 32% premium for global oil and gas services deals in the past year, according to data compiled by Bloomberg.

54.     In addition, the Proposed Transaction fails to adequately compensate Foster Wheeler's shareholders for the significant benefits that AMEC will receive from the merger.  On February 13, 2014, AMEC issued a press release regarding the Proposed Transaction.  Among other things, the press release touted the benefits AMEC will receive from the merger, stating:

> The combination is expected to strengthen AMEC's oil and gas business, enabling it to expand its operations across the whole industry value chain, without changing its low-risk business model.
>
> Until now, AMEC's oil and gas business has been focused on the offshore upstream market, while Foster Wheeler has focused on the onshore, mid and downstream markets.
>
> 87 per cent of AMEC's revenues today come from Europe and the Americas, with the balance coming from Growth Regions. **The combination is expected to double AMEC's revenues from Growth Regions and significantly expand its presence in Latin America.**

Both companies employ highly skilled workforces and provide their customers with high value services, such as engineering, design and project management. The increased scale and use of common tools and processes is expected to provide enhanced capability to balance workflow efficiently. AMEC believes this will allow the combined workforce of more than 40,000 to keep delivering excellent projects consistently for customers.

**Combining the two companies will create some cost efficiencies, expected to be at least $75 million per annum.** These savings will primarily come from removing head office duplication and scaling back office functions. It is expected to cost approximately $75 to $90 million to achieve these cost synergies. In addition, significant tax synergies are anticipated.

**Further, the combination is expected to create new opportunities to develop the services offered to the combined customer base.** For instance, Foster Wheeler has an extensive track record managing large scale cost-plus EPC contracts, and AMEC can expand its brownfield and environmental service offering into the mid and downstream markets.

Foster Wheeler and AMEC believe the Foster Wheeler power equipment business is a world-leader at supplying steam generators to utility and industrial plants — particularly focusing on unusual fuel mixes and emission controls. It is a niche business — and with that AMEC anticipates continued stable revenues, high margins and strong cash flow.

(Emphasis added).

55.    Similarly, Defendant Masters has acknowledged the tremendous value Foster Wheeler will bring to AMEC.  In Foster Wheeler's February 13, 2014 press release, Defendant Masters stated:

Both companies have strategies that are highly focused on growth, and our combination will help deliver on Foster Wheeler's key strategic objectives: establishing material positions in upstream and minerals and metals, building positions in growth geographies and extending our services offering.

Specifically, the combination is expected to result in a company with:

- Complementary and more competitive market positions in offshore and onshore upstream oil and gas, gas monetization, refining and chemicals, minerals and metals, power and clean energy, environment & infrastructure and pharmaceuticals

- An expanded, geographically diverse global presence, with offices and projects in more than 50 countries

- 16 -

- A material increase in capacity, with a total headcount of more than 40,000 employees

- A strong financial profile, with annual pro forma revenues of approximately $10 billion and backlog of approximately $10 billion

56.     Despite these strong synergies, the Board failed to secure a fair deal for the Company, either for the intrinsic value of its assets or the value of the Company's assets to AMEC in a combined entity.

57.     Given the Company's recent strong performance and its positioning for continued growth, the Offer Price is inadequate.  The Proposed Transaction will prejudice Plaintiff and the public shareholders from receiving the full value of their investment in Foster Wheeler and from their right to share proportionately and equitably in the true value of Foster Wheeler's valuable and profitable business.

**The Unfair Deal Protection Devices**

58.     In addition to concerns regarding the inadequate consideration offered to Foster Wheeler shareholders in the Proposed Transaction, the Implementation Agreement features several provisions that work to preclude other bidders from stepping forward with a superior alternative offer.  At best, these provisions place shareholders in an unfortunate position and, at worst, question the impartiality of the Board in the negotiation process.

59.     First, the Implementation Agreement includes a "no solicitation" provision which impairs the ability of the Foster Wheeler Board to secure an offer that adequately captures the inherent value of the Company and adequately compensates Foster Wheeler's shareholders for their ownership interest in the Company.  Specifically, clause 11.2 of the Implementation Agreement prohibits the Board and any Company personnel from soliciting, initiating, facilitating or encouraging alternative proposals in an attempt to procure a price in excess of the amount offered by AMEC.  This clause also demands that the Company terminate any and all prior or on-going discussions with other potential suitors and prohibits Foster Wheeler from terminating, waiving,

releasing or modifying any provision of any confidentiality or standstill agreement relating to an acquisition proposal for the Company.

60.      Similarly, clause 11.2 of the Implementation Agreement provides an "information rights" provision whereby the Company must notify AMEC of any Competing Proposal (as defined in the Implementation Agreement) within one business day.  Then, if and only if the Board determines that the Competing Proposal is a Superior Proposal (as defined in the Implementation Agreement), clause 11.4 of the Implementation Agreement provides a "matching rights" provision whereby the Company must grant AMEC three business days to amend the terms of the Implementation Agreement so that such Competing Proposal ceases to be a Superior Proposal.

61.      The foregoing provisions have the effect of ensuring that no other company will put forth a competing offer because their offer would be immediately communicated to AMEC, giving AMEC an informational advantage against any competing proposal as well as the ability to match any competing bid.

62.      Defendants have also agreed to a termination fee, which may require Foster Wheeler to pay a termination fee of £32.5 million to AMEC in the event that the Company decides to pursue another offer, thereby requiring that the alternate bidder agree to pay a naked premium for the right to provide Foster Wheeler shareholders with a superior offer.

63.      Accordingly, the Proposed Transaction is wrongful, unfair and harmful to the Company's public shareholders, and represents an attempt to deny Plaintiff and the other members of the Class their right to obtain their fair proportionate share of the Company's valuable assets, growth in profits and earnings.

64.      As a result of Defendants' unlawful actions, Plaintiff and the other members of the Class will be damaged in that they will not receive their fair portion of the value of the Company's assets and business and will be prevented from obtaining the intrinsic value of their

equity ownership of the Company.

65.     Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, to the irreparable harm of Plaintiff and the Class.

66.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law.

## COUNT I

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

67.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

68.     The Individual Defendants have violated the fiduciary duties of care, loyalty, and independence owed to the public shareholders of Foster Wheeler and have acted to put their personal interests ahead of the interests of Foster Wheeler shareholders.

69.     By the acts, transactions, and course of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value inherent in and arising from Foster Wheeler.

70.     The Individual Defendants have violated their fiduciary duties by entering Foster Wheeler into the Proposed Transaction without regard to the effect of the Proposed Transaction on Foster Wheeler shareholders.

71.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and independence owed to the shareholders of Foster Wheeler because, among other reasons:

        (a)     they failed to take steps to obtain a fair price for Foster Wheeler's public shareholders; and

(b)     they failed to properly value Foster Wheeler and its various assets and operations.

72.     Because the Individual Defendants dominate and control the business and corporate affairs of Foster Wheeler, and are in possession of or have access to private corporate information concerning Foster Wheeler's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Foster Wheeler which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

73.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

74.     As a result of the Individual Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of Foster Wheeler's assets and operations.  Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Transaction terms, and may consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

75.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breach Of Fiduciary Duties
### Against All Defendants

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

77.     The Individual Defendants owed to Plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

78.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the Class.

79.     Defendant Foster Wheeler knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.   Each of the Individual Defendants has also knowingly aided and abetted the wrongdoing alleged herein concerning the other Individual Defendants.   In so doing, all of the Defendants have rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

80.     Foster Wheeler participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing its own interests.   Defendants obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendant's breaches.   Defendants will benefit from the acquisition of the Company at an inadequate and unfair consideration if the Proposed Transaction is consummated.

81.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands relief in its favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as Class representative;

B.      Declaring and decreeing that the Implementation Agreement was entered into in breach of the fiduciary duties of Defendants and is therefore unlawful and unenforceable;

C.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a Implementation Agreement providing fair terms for shareholders;

D.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

E.      Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorney's and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

Respectfully Submitted

THE ROTHENBERG LAW FIRM LLP

Dated: <u>March 12, 2014</u>                    By:  <u>/s/ *Daniel Breen, Esquire*</u>

Daniel Breen, Esquire
THE ROTHENBERG LAW FIRM LLP
Tarragon Executive Offices
811 Church Road, Suite 222
Cherry Hill, NJ 08002

**<u>OF COUNSEL</u>:**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
WEISSLAW LLP
1500 Broadway, 16th Floor
New York, NY 10036
Tel:     (212) 682-3025
Fax:     (212) 682-3010